UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL B. SUMPTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-3444 |
| | § | |
| THE AMERICAN BOTTLING CO., *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendants, The American Bottling Co. and Dr. Pepper Snapple Group, Inc.'s motion for summary judgment. Dkt. 17. After considering the motion, response, reply, record evidence, and applicable law, the court is of the opinion that the motion should be GRANTED.

**I. BACKGROUND**

Defendant is a beverage company that manufactures and sells soft drinks and other beverages around the world.[1] Michael Sumpter was employed by defendant as a transport driver from June 1982 until his termination on January 10, 2011.[2] As a transport driver, Sumpter was responsible for transporting pallets of beverages to satellite warehouses, transporting empty bottles and cans to the main warehouse, and delivering products to customers.[3] Initially, Sumpter was scheduled to begin work at 4:00 a.m. for each shift.[4]

---

[1] Dkt. 17, Ex. 1, Declaration of Clarissa Webb ("Webb Decl.") ¶3.

[2] *Id.* at Ex. 3, Deposition of Michael Sumpter ("Sumpter Dep."), pp. 10-11.

[3] *Id.* at pp.16-18.

[4] *Id.* at p. 45.

Defendant mandated that its drivers arrive to work on time to ensure timely delivery of its products to its customers.[5] In this regard, defendant implemented an attendance policy applicable to all of its employees, which provided:

> [Defendant] expect[s] our employees to be here 100% of the time. Your teammates count on you to start your shift on time when you are scheduled to work. However, we know that there are unplanned events that cause employees to miss work on an exceptional basis. It is not the company's intent to penalize employees who have legitimate reasons to miss work. However, because of the disruption caused to the business, [defendant] cannot afford to employ those employees who have patterns of tardiness or absences.
>
> You and your supervisor are responsible for tracking your attendance. If your supervisor sees a pattern of tardiness or absences, you will be counseled and be given a chance to correct the problem. If attendance continues to be an issue, then your employment will be terminated, subject to federal and state employee leave laws.
>
> Notify your supervisor as soon as possible, within two (2) hours of your shift start time is preferable, if you will be tardy or have an unplanned absence. This will give your supervisor time to plan for your absence.
>
> If you have any questions about attendance standards, contact your supervisor or Human Resources.[6]

Sumpter was provided a copy of this attendance policy and acknowledged his understanding of the policy.[7]

On April 1, 2009, Sumpter underwent a sleep study and was diagnosed with sleep apnea.[8] He was prescribed a Bi-Level Positive Airway Pressure ("BIPAP") machine in order to assist his

---

[5] *Id.* at pp. 16-18.

[6] Webb Decl., Ex. 1-A.

[7] Sumpter Dep., pp. 18-23.

[8] *Id.* at pp. 29-31.

breathing while sleeping.[9] Sumpter contends that he was required to comply with Department of Transportation ("DOT") guidelines regarding the amount of continuous sleep on a BIPAP machine that a transport driver should receive before driving.[10] The DOT regulations require a driver with sleep apnea to receive at least 4 hours of continuous sleep on a BIPAP machine in seventy percent (70%) of the time prior to reporting for work.[11] Sumpter had a difficult time adjusting to the use of the BIPAP machine and used it on an inconsistent basis, causing him to be late for work in order to meet the DOT guidelines.[12]

Sumpter maintains that his sleep apnea and use of the BIPAP machine were the causes of his regular tardiness. However, Sumpter admitted that he was regularly late for work prior to his sleep apnea diagnosis.[13] Specifically, Sumpter agreed that "punctuality was a problem" prior to his diagnosis.[14]

In March 2010, Sumpter was informed, as part of his annual performance appraisal, that his tardiness was a problem.[15] In April 2010, Christopher Ollison became Sumpter's supervisor.[16] Sumpter told Ollison about his sleep apnea and that he was having a difficult time arriving to work

---

[9] *Id.* at p. 41.

[10] *Id.* at pp. 44-45.

[11] *Id.* at pp. 44, 47.

[12] *Id.* at pp. 42-43, 138.

[13] *Id.* at pp. 58-59.

[14] *Id.*

[15] *Id.* at p. 26.

[16] Webb Decl. ¶8.

on time because of his BIPAP machine.[17] Sumpter did not request a later start time from Ollison because of this problem.[18] Ollison responded that he was "pretty easy to work with," but that he did expect his transport drivers to report to work on time.[19]

Between April and June 2010, Sumpter admitted that he arrived late on 39 out of 47 work shifts.[20] Sumpter would arrive anywhere between 20 minutes to 4 hours late.[21] During this period, Sumpter never called Ollison to notify him that he was going to be late for work.[22] On June 30, 2010, Ollison met with Sumpter to discuss his tardiness.[23] Ollison proposed that Sumpter's start time be changed from 4:00 a.m. to 5:00 a.m.[24] Sumpter agreed to change his start time.[25] Ollison reminded Sumpter that he was expected to be to work on time and was required to contact Ollison if he was going to be late for work.[26] Sumpter did not mention his sleep apnea condition or BIPAP machine issues during this meeting.[27]

---

[17] Sumpter Dep., pp. 64-66.

[18] *Id.*

[19] Dkt. 17, Ex. 2, Declaration of Christopher Ollison ("Ollison Decl.") ¶6; Sumpter Dep., p. 65.

[20] *Id.* at pp. 60-61.

[21] *Id.* at pp. 60-62; Webb Decl., Ex. 1-C.

[22] Sumpter Dep., p. 72; Ollison Decl. ¶7.

[23] Sumpter Dep., pp. 66-67.

[24] *Id.* at pp. 67-68.

[25] *Id.*

[26] Ollison Decl. ¶8.

[27] Sumpter Dep., pp. 67-68.

Despite the later start time, Sumpter continued to arrive late for work. From July 2010 to August 2010, Sumpter was late for work 30 times out of 35 shifts.[28] On 27 of those times, he was more than 30 minutes late.[29] Further, Sumpter never called in to report his tardiness.[30] On August 25, 2010, Ollison again met with Sumpter to counsel him regarding the company's expectations and Sumpter's excessive tardiness.[31] Ollison asked Sumpter what could be done to help him arrive to work on time; however, Sumpter did not request an accommodation or inform Ollison that his continued tardiness was due to his sleep apnea or BIPAP machine.[32]

Following this meeting with Ollison, Sumpter continued to arrive late for work. Between September and November 2010, Sumpter was late 49 out of 54 shifts.[33] On six of those occasions, he was more than one hour late.[34] On December 3, 2010, Ollison met once again with Sumpter regarding his excessive tardiness.[35] Sumpter did not cite his sleep apnea as the reason for his tardiness and did not request a schedule change or other accommodation.[36] At the conclusion of this meeting, Ollison informed Sumpter if he was late again without explanation, then Sumpter's

---

[28] *Id.* at p. 70; Webb Decl. ¶10.

[29] Sumpter Dep., p. 71.

[30] *Id.* at p. 72.

[31] Ollison Decl. ¶11.

[32] Sumpter Dep., pp. 75-76.

[33] Webb Decl. ¶12.

[34] *Id.*

[35] Sumpter Dep., pp. 79-80.

[36] *Id.* at pp. 83-84.

employment would be terminated.[37] Following this December meeting, Sumpter acknowledged he was still late for work on 7 of 19 shifts, including over two hours late on one occasion.[38] Further, Sumpter admitted he never once called in to inform Ollison that he would be late.[39]

Human Resources also conducted an investigation into Sumpter's excessive tardiness and discovered that Sumpter was incorrectly recording his time on his time sheets.[40] The investigation found that the time entered automatically when Sumpter used his access badge to enter the facility was often times later than the time actually recorded on his time sheets.[41] Sumpter agreed that he recorded an earlier time, based on his personal watch, because he did not want his time sheets to reflect his late arrival.[42] Sumpter's conduct constituted falsification of time records and was grounds for immediate termination under defendant's employment policies.[43]

When Sumpter returned from the Christmas holidays in 2010, he learned that schedule changes were being considered by management.[44] Sumpter claims he intended to ask for a schedule change at this time, but that he was unable to meet with Ollison from January 5 to January 7, 2011.[45] During this period, Sumpter spoke with Ollison on three occasions about scheduling a meeting to

---

[37] *Id.* at p. 80; Ollison Decl. ¶14.

[38] Sumpter Dep., p. 87; Webb Decl. ¶14.

[39] Sumpter Dep., p. 72.

[40] Webb Decl. ¶17.

[41] *Id.*

[42] Sumpter Dep., pp. 89-90, 94-95.

[43] Webb Decl. ¶17.

[44] Sumpter Dep., p. 96.

[45] *Id.* at p. 95-104.

6

discuss the schedule change, but Sumpter never actually asked for a schedule change.[46] On January 10, 2011, Sumpter met with Ollison and Clarissa Webb, the Human Resources Manager, who terminated his employment as a result of repeated tardiness, failure to call in late to his supervisor, and falsification of time records.[47] Sumpter never requested an accommodation from Human Resources for his sleep apnea.[48]

Following his termination, Sumpter filed an EEOC charge of discrimination against defendants, claiming disability discrimination and failure to accommodate. Sumpter received a right to sue letter, and subsequently filed this lawsuit against American Bottling Co. and Dr. Pepper Snapple Group, Inc. for violations of the Americans with Disabilities Act, disability discrimination, and intentional infliction of emotional distress.

Defendants now move for summary judgment, arguing that Sumpter's claims fail as a matter of law. Specifically, defendants assert that Sumpter was not a "qualified individual" who could perform the essential functions of his job with or without reasonable accommodation, that he did not request a reasonable accommodation, that no reasonable accommodation would have allowed Sumpter to perform the essential functions of his job, and that defendant terminated Sumpter because of his repeated tardiness, failure to call in late for work, and falsification of time records. In response to defendants' motion for summary judgment, Sumpter does not dispute that American Bottling Co. is not his employer, and he has abandoned his claim for intentional infliction of emotional distress.

---

[46] *Id.*

[47] *Id.* at pp. 90-91.

[48] *Id.* at p. 95.

Dkt. 20. Therefore, the court will only address Sumpter's disability discrimination and failure to accommodate claims against Dr. Pepper Snapple Group, Inc..

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The moving party bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. The non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The substantive law determines the facts which are material in each case. Lastly, in determining whether a genuine dispute of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

## III. ANALYSIS

### A. *Disability Discrimination*

The Americans with Disabilities Act ("ADA") provides that no employer shall discriminate against a qualified individual on the basis of disability in regard to "the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Sumpter has also plead a cause of action for disability discrimination under the Texas Commission on Human Rights Act ("TCHRA"), which prohibits employment discrimination on the basis of "race, color, disability, religion, sex, national origin, or age . . . ." TEX. LAB. CODE § 21.051. "[T]he TCHRA is interpreted "in a manner consistent with federal laws prohibiting employment discrimination." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 530 (S.D. Tex. 1999) (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996)); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006) (analyzing a TCHRA claim under ADA case law). Therefore, the court's analysis pertaining to Sumpter's ADA claims will apply equally to his discrimination claims under the TCHRA.

When a plaintiff asserts an ADA discrimination claim involving an adverse employment action and has no direct evidence of discrimination, the court uses the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *E.E.O.C. v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 615 (5th Cir. 2009). Under this framework, the plaintiff must first establish a prima facie case of discrimination by showing that: (1) he suffered from a disability or was regarded as disabled; (2) he was qualified for the job that he held; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *Id.* If the plaintiff

successfully establishes a prima facie case, then the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id*. If the employer meets its burden, then the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was a pretext for unlawful discrimination. *Id.* A prima facie case coupled with a showing that the proffered reason was pretextual will usually be sufficient to survive summary judgment. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

Even assuming that Sumpter was able to establish the first three elements of his prima facie case, Sumpter has failed to meet his burden on the fourth element. Sumpter must establish a genuine dispute of material fact regarding whether he was treated less favorably than similarly situated employees outside of the protected class. *Lee v. Kansas City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009); *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001). In order to do so, he must show that "employees who were not members of the plaintiff's protected class were treated differently under circumstances nearly identical to his." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (internal quotations omitted); *Aldrup*, 274 F.3d at 287 n.23 (in disparate treatment claim, the employees must be in "nearly identical circumstances") (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)). Employees with different responsibilities, supervisors, or disciplinary records are not considered to be nearly identical. *Lee*, 574 F.3d at 260. No presumption of discrimination is raised by plaintiff's prima facie case if legitimate substantive differences between the plaintiff and proffered comparator explain the disparate treatment. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

Sumpter has failed to offer any competent evidence[49] establishing that he was replaced by or treated less favorably than a non-disabled person. In his response to defendants' motion for summary judgment on this element of his claim, Sumpter states: "Sumpter's schedule could have been easily moved without disruption to Defendants' business." Dkt. 20, p. 10. Sumpter offers no other evidence or argument to address the fourth element of his claim. A plaintiff's failure to establish a genuine issue of material fact on any of the essential elements of his claim entitles defendant to summary judgment. *Blanks v. Sw. Bell Communications, Inc.*, 310 F.3d 398, 410 (5th Cir. 2002).

Even if the court were to consider the unsubstantiated evidence offered by Sumpter in his EEOC Charge, there is still an insufficient factual basis to conduct a meaningful analysis regarding whether the proffered comparators were situated in nearly identical circumstances to Sumpter, in terms of their supervisors, disciplinary records, or the contexts in which schedule changes were permitted. *Lee*, 574 F.3d at 259-60 (requiring more than a superficial analysis when determining if the comparator's circumstances are nearly identical to those of plaintiff). Additionally, Sumpter's allegations in his EEOC Charge do not demonstrate that he was treated less favorably than other non-disabled drivers because he was given a later start time–just like the other drivers. For failing to

---

[49] The only evidence that Sumpter seeks to introduce is his Equal Employment Opportunity Commission charge of discrimination ("EEOC Charge"). Defendants move to strike the EEOC Charge as incompetent summary judgment evidence. Dkt. 21, p. 4. Evidence that would not be admissible at trial is not competent evidence to be considered during summary judgment. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991). The court agrees that the contents of the EEOC Charge upon which Sumpter relies are incompetent summary judgment evidence. First, the statements made in the EEOC Charge relating to the schedules and tardiness of other employees are inadmissible hearsay—out-of-court statements that Sumpter seeks to rely on to show the truth of the matter asserted. *See* FED. R. EVID. 801(c). Further, the statements Sumpter offers are unsworn, unauthenticated, unsupported by an affidavit, and otherwise unverified. Thus, the EEOC Charge submitted by Sumpter as Exhibit A to his response to defendants' motion for summary judgment is stricken.

show a material dispute on this element of his prima facie case, the court could grant defendants' motion for summary judgment on Sumpter's disability discrimination claim. *Johnson v. Parkwood Behavioral Health Sys.*, 551 F. App'x 753, 756 (affirming summary judgment on disability discrimination claim because plaintiff did not present any evidence that she was replaced by a non-disabled person or treated less favorably than a non-disabled employee).

Even assuming, however, that Sumpter established his prima facie case, he has failed to raise a genuine issue of material fact that defendant's legitimate, nondiscriminatory reasons for his termination were a pretext for discrimination. A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Further, a plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates" in order to establish pretext. *Wallace*, 271 F.3d at 220.

Defendants have offered extensive summary judgment evidence that Sumpter was terminated for repeated tardiness, failure to notify his supervisor when he was going to be late, and falsification of time records. Sumpter, on the other hand, has not offered substantial evidence indicating that defendant's proffered legitimate, nondiscriminatory reasons are a pretext for discrimination. *Laxton*, 333 F.3d at 578 (to show pretext, "the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination"). As previously noted, Sumpter has not established any disparate treatment because his schedule was changed like the other drivers. Further, Sumpter has not shown that defendants' proffered reasons are false. In fact, Sumpter admits that he committed each of the policy violations cited by defendants. Specifically,

Sumpter was consistently late, despite numerous warnings and being given a later start time.[50] Sumpter also admitted that he never once called Ollison to report that he would be late for work.[51] And, he purposefully documented his time incorrectly on his time sheets to avoid the appearance of being late.[52] Other than his own subjective belief that discriminatory animus led to his termination, Sumpter has failed to present summary judgment evidence from which a reasonable juror could draw the inference that defendant's grounds for termination were a pretext for disability discrimination. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997) (to establish pretext, a plaintiff cannot solely rely on his subjective belief that discrimination has occurred). Thus, Sumpter's disability discrimination claim fails as a matter of law.

**B.     Failure to Accommodate**

Under the ADA, an employer must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position . . . ." *Id.* at § 12111(8). Defendants have shown, as a matter of law, that Sumpter could not perform an essential function of his job with or without an accommodation. It is legally and factually undisputed that arriving on time was an essential function of Sumpter's job. *See* Dkt. 20, p. 9; *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) ("[C]ourts are in agreement that regular attendance is an essential function of most jobs."). The record reveals that Sumpter could not arrive on time without a reasonable

---

[50] Webb Decl. ¶¶ 9-16; Ollison Decl. ¶¶7-16.

[51] Sumpter Dep., p. 72.

[52] *Id.* at pp. 89-90.

13

accommodation. Sumpter's persistent tardiness occurred prior to his sleep apnea diagnosis.[53] Further, the evidence shows that he was also unable to arrive to work on time, even with a reasonable accommodation. As proposed by his supervisor, Sumpter's start time was pushed back by one hour to 5:00 a.m. in order to address his untimeliness. This unsolicited accommodation proved to be unworkable for Sumpter because he was still routinely late by an hour or more.[54] Although Sumpter now contends that an even later start time would have resolved the situation, the evidence does not support such a conclusion because he did not request a later start time and he was still frequently late despite being given an extra hour. Therefore, the present record establishes that with or without a reasonable accommodation, Sumpter was unable to perform an essential function of his job.

Additionally, Sumpter did not request an accommodation. The employer's obligation to provide a reasonable accommodation is triggered by the employee's request for such an accommodation. *Taylor v. Principal Fin. Group*, 93 F.3d 155, 165 (5th Cir. 1996); *E.E.O.C. v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 621 (5th Cir. 2009) (An employee is required to notify his employer of his disability and request a reasonable accommodation.). The employee does not have to mention the ADA or use magic words like 'reasonable accommodation,' but he must explain that the adjustment in working conditions or duties he is seeking is for a medical condition-related reason. *Id.* Here, although Sumpter informed his supervisor of his sleep apnea condition, he never requested an accommodation, despite multiple opportunities to do so.[55] During

---

[53] *Id.* at pp. 58-59.

[54] Webb Decl. ¶¶10-14 (citing over 15 instances where Sumpter was an hour or more late following his schedule change); Sumpter Dep., pp. 71, 79.

[55] *Id.* at pp. 106-07, 116-17 (Sumpter requested a meeting with Ollison on three separate occasions without expressly asking for a schedule change.); *id.* at pp. 67, 75-76, 83-84 (Ollison counseled Sumpter regarding his excessive tardiness on three separate occasions in June, August, and December 2010.).

several counseling sessions regarding Sumpter's continued tardiness, Sumpter failed to mention his condition or request a change in his schedule.[56] Sumpter claims that he intended to ask for a schedule change during the meeting where he was terminated. His intention to request a schedule change, however, was too little, too late. Sumpter had already been admonished on four separate occasions about his tardiness and the requirement that he call his supervisor if he was going to be late.[57] He had also been told by his supervisor that if he failed to arrive to work on time, he would be subject to termination.[58] Thus, by the time Sumpter claims he intended to request an accommodation, his termination was already a foregone conclusion. Because Sumpter did not request an accommodation as required to trigger his employer's responsibility to provide a reasonable accommodation, his failure to accommodate claim fails.

---

[56] *Id.*

[57] *Id.*

[58] Ollison Decl. ¶14.

## IV. Conclusion

For the reasons stated herein, the court concludes that no genuine issue of material fact exists regarding Sumpter's claims for disability discrimination or failure to accommodate under the ADA or the TCHRA. Sumpter has abandoned his claims against American Bottling Co. and his claim for intentional infliction of emotional distress. Therefore, defendants are entitled to judgment as a matter of law on all of Sumpter's claims. Accordingly, the court grants defendants, American Bottling Co. and Dr. Pepper Snapple Group, Inc.'s motion for summary judgment (Dkt. 17) and dismisses this action with prejudice. A separate final judgment will be issued in accordance with this opinion.

It is so ORDERED.

Signed at Houston, Texas on November 13, 2014.

Gray H. Miller
United States District Judge